UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN K. NYGAARD,<br><br>    Plaintiff,<br><br>    v.<br><br>PROPERTY DAMAGE APPRAISERS, INC.,<br><br>    Defendant. | Case No. 16-cv-02184-VC<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 27 |

The question is whether the parties entered into a valid agreement to arbitrate, notwithstanding the language of the California addendum stating that certain provisions of the Franchise License Agreement may not be enforceable under California law. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Court "appl[ies] ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks and citation omitted). As discussed in a prior ruling, the choice-of-law clause in the Franchise License Agreement is invalid, and California law governs questions of contract formation and interpretation. March 23, 2017 Order at 1-2, Dkt. No. 17.

Under California law, the motion to compel arbitration must be denied. PDA contends it defies common sense to conclude that a franchisor's acknowledgment that a particular provision "may not be enforceable under California law" necessarily signifies that there was no meeting of the minds as to that provision. PDA may well be right about that. But the California Court of Appeal, like the Ninth Circuit, has held that a proviso like the one in the California addendum shows that there was no meeting of minds as to the referenced provision, and has applied the rule

in a context very similar to the one here. *See Winter v. Window Fashions Professionals, Inc.*, 166 Cal. App. 4th 943, 950-51 (2008); *see also Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999). Indeed, the California Court of Appeal in *Winter* expanded *Laxmi*'s holding. *Winter* confirmed that *Laxmi*'s approach remained valid, even though California Business and Professions Code Section 20040.5, as applied to arbitration agreements, had been held preempted by the Federal Arbitration Act. *See* 166 Cal. App. 4th at 950; *see also Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001). And it clarified, albeit without much analysis, that *Laxmi*'s reasoning requires invalidation of what would otherwise be an agreement to arbitrate (that is, what would be a valid agreement to arbitrate absent the proviso about enforceability), not just agreements regarding choice of law or forum. *See Winter*, 166 Cal. App. 4th at 950; *compare Laxmi*, 193 F.3d at 1098; *but see Roberts v. Synergistic Int'l, LLC*, 676 F. Supp. 2d 934, 948-51 (E.D. Cal. 2009). PDA has provided no reason for the Court to believe that the California Supreme Court would adopt a different rule. *See Norcia*, 845 F.3d at 1284 (noting that federal courts applying California law are bound by decisions of the California Supreme Court and that, in the absence of a decision directly on point, federal courts "generally will follow a published intermediate state court decision regarding California law unless [they] are convinced that the California Supreme Court would reject it" (internal quotation marks and citation omitted)). This Court's disagreement with the rationale embodied in *Winter* and *Laxmi* is not enough, on its own, to justify a finding that the California Supreme Court would come out differently.

Here, the relevant portion of the California law addendum, which was separately signed by the parties, provides that the following paragraph will supplement Section 18 of the Franchise License Agreement:

> [1] The Agreement requires binding arbitration. [2] The arbitration will occur at the PDA's corporate headquarters in Fort Worth, Texas, before a sole arbitrator agreed to by the parties and selected from the panel of arbitrators of the American Arbitration Association, with the costs being borne by the losing party. [3] This provision may not be enforceable under California law. [4] Prospective franchisees are encouraged to

2

consult private legal counsel to determine the applicability of California and federal laws (such as Business and Professions Code Section 20040.5, Code of Civil Procedure Section 1281, and the Federal Arbitration Act) to any provisions of the Franchise Agreement restricting venue to a forum outside of the State of California.

Decl. of Grady Nance, Ex. A, Dkt. No. 27-2 at 107.

The best reading of this paragraph is one in which "[t]his provision" refers to the arbitration provision in its entirety, not merely one aspect of it. The sentence that follows the first one of the paragraph just elaborates on the specific terms of the arbitration provision. Any interpretation of "this provision" that is cabined to one of the three requirements included in sentence [2] is strained. Sentence [4], at first glance, might seem to limit "this provision" to the forum-selection clause, as that is the only part of the dispute resolution provision that it mentions. But, rather than refer to *this* provision as sentence [3] does, sentence [4] refers to "any provisions" of the agreement that restrict venue to a non-California forum. Accordingly, there is little reason to think that sentence [4] is simply clarifying the meaning of sentence [3]. *Cf. Segal v. Silberstein*, 156 Cal. App. 4th 627, 633 (2007) ("If possible, we should give effect to every provision and avoid rendering any part of an agreement surplusage."). Further, because the question here is whether the parties ever entered into an arbitration agreement in the first place, there is no basis for resolving any ambiguity in favor of arbitration. *See, e.g., Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1229 (2004) ("While it is true that under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, that policy does not come into effect until a court has concluded that under state contract law, the parties entered into an agreement to arbitrate." (internal quotation marks and citations omitted)); *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 74 n.8 (2000) ("California's public policy favoring alternative dispute resolution does not come into play unless parties have entered an enforceable arbitration agreement." (citing *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 787-

90 (1998))). Section 18 of the Agreement therefore does not include a valid arbitration clause. PDA has pointed to no other provision in the Agreement demonstrating that the parties agreed to resolve their disputes via arbitration.[1]

Because governing law compels a conclusion that the parties never entered into an enforceable arbitration agreement, PDA's motion to compel arbitration is denied. A telephonic case management conference is scheduled for January 30, 2018 at 2:30 P.M. to discuss how the parties intend to proceed. The parties' Case Management Statement is due by January 23, 2018, and it should include a proposed schedule for adjudication of the case. By January 26, Nygaard must email a telephone conference number and access code to vccrd@cand.uscourts.gov, copying PDA.

**IT IS SO ORDERED.**

Dated: December 28, 2017

VINCE CHHABRIA
United States District Judge

---

[1] As stated in the prior order, the Court is not persuaded that the analysis in *Jacobson v. Snap-on Tools Co.*, No. 15-CV-02141-JD, 2015 WL 8293164, at *3-4 (N.D. Cal. Dec. 9, 2015), or *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1081 (N.D. Cal. 2015), should apply here. *See* March 23, 2017 Order at 2.