JASON W. SCHAFF, SBN: 244285
JACOB D. FLESHER, SBN: 210565
NICOLE M. LOW, SBN: 321429
**FLESHER SCHAFF & SCHROEDER, INC.**
2202 Plaza Drive
Rocklin, CA 95765
Telephone: (916) 672-6558
Facsimile: (916) 672-6602

Attorney for Plaintiffs,
BRIAN NYGAARD: and BKN APPRAISALS. INC.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

* * *

| | |
|---|---|
| BRIAN NYGAARD; and BKN APPRAISALS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>PROPERTY DAMAGE APPRAISERS, INC., a corporation;<br><br>Defendant. | **CASE NO. 2:16-cv-02184-VC**<br>*Complaint filed: 8/15/16*<br>*Trial Date: 10/25/21*<br><br>**FIRST AMENDED COMPLAINT FOR WRONGFUL TERMINATION OF FRANCHISE; BREACH ON CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; CONVERSATION; UNFAIR BUSINESS PRACTICES [BUS & PROF. CODE SECTION 17200]** |

BRIAN K. NYGAARD, an individual doing business as PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA and BKN APPRAISALS, INC. a California Corporation, who allege as follows:

1. Plaintiff BRIAN K. NYGAARD ("NYGAARD") is an adult male who at all times relevant herein was and is a resident of the City of El Dorado Hills, County of El Dorado.

2. Plaintiff BKN APPRAISALS, INC. ("BKN") is and at all times relevant herein was a California corporation formed and organized under the laws of the State of California. BKN has at all relevant times been doing business as "PDA SACRAMENTO"

1  and "PDA STOCKTON" until the unilateral termination of his right to operate those
2  businesses on or about June 2, 2016, as alleged herein.
3      3.    BKN has at all relevant times been doing business as "PDA SANTA ROSA"
4  until the unilateral termination of his right to operate those business on or about
5  November 10, 2016.
6      4.    Plaintiffs NYGAARD and BKN shall be referred to collectively herein
7  throughout as "PLAINTIFFS."
8      5.    Defendant PROPERTY DAMAGE APPRAISERS, INC. ("PDA") is and at all
9  times relevant was a corporation duly organized under the laws of the State of Texas.
10  PDA is and at all times relevant was a national franchisor of property damage appraisal
11  businesses, which franchises included PDA SACRAMENTO, PDA STOCKTON, and PDA
12  SANTA ROSA. PDA SACRAMENTO's business office is at 9175 Kiefer Blvd.,
13  Sacramento, County of Sacramento, California.
14      6.    PLAINTIFFS are unaware of the identities of other persons or entities
15  designated as DOES and are informed, believe, and based thereon allege that DOES 1-50
16  are agents, shareholders, principals, or affiliates of Defendants and/or others, who have
17  conspired with, aided, abetted, directly or actively participated in, and/or ratified the
18  conduct complained of herein. PLAINTIFFS allege that all Defendants designated herein
19  as a DOE are responsible and a direct and legal cause in some manner for the events,
20  acts, and tortious conduct herein referred to, and which caused damage to PLAINTIFFS
21  as set forth in this Complaint. PLAINTIFFS reserve their right to amend this Complaint
22  when the identity of those persons or entities designated as DOES is discovered.
23      7.    PLAINTIFFS are informed, believe, and based thereon allege that at all
24  times pertinent hereto, each Defendant was or is the agent, officer, director, employer,
25  employee, or other representative of the remaining Defendants, and that each such
26  Defendant at all times herein mentioned committed the acts and omissions complained of
27  within the course and scope of their representative capacity with full knowledge, consent,
28  authority, and ratification of the other Defendants named herein.

8. Jurisdiction and venue are proper in this Court and in this County as Defendants named herein purposefully availed themselves of the forum by creating and promoting ongoing franchise relationships within the forum State and operating franchise business within the City and County of Sacramento. Defendants, and each of them, as franchisors operating property damage appraisal businesses within the State of California have at all times relevant herein had continuous and substantial contact with franchisees, including PLAINTIFFS, within the State of California, including but not limited to, within the County of Sacramento.

9. Beginning in or about 1999, plaintiff NYGAARD commenced employment as a property damage appraiser in the Sacramento area, working for a franchisee of PDA.

10. After accumulating more than five years of experience in the property damage appraisal business, particularly within the PDA model, in or about 2005, plaintiff NYGAARD was offered an opportunity to purchase PDA's Sacramento franchise from its former owner. Plaintiff NYGAARD purchased the franchise, PDA SACRAMENTO. As PDA SACRAMENTO's owner had an additional franchise in Stockton that he intended to sell one day, the parties' agreement also gave NYGAARD a right of first refusal when the Stockton business went on the market.

11. Because PDA's franchise license agreement required PDA to consent to any sale or transfer of PDA's franchise businesses, NYGAARD also flew to Fort Worth, Texas, PDA's headquarters, for a one-hour interview, prior to closing the purchase of PDA SACRAMENTO. Thereafter, with PDA's blessing, NYGAARD took over the PDA SACRAMENTO franchise, providing property damage appraisal services to insurance companies and private clients within the Greater Sacramento community.

12. Thereafter, NYGAARD exercised his right of first refusal to purchase PDA STOCKTON. He made a $100,000 down payment and obtained owner financing for the remainder. At the request of PDA, NYGAARD also assumed control over SANA ROSA PDA, a geographically large territory of importance to PDA, as one of its key clients, California State Automobile Association, had one of its large claims offices there.

13. On December 17, 2010, NYGAARD formed BKN for the express purpose of operating PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA. NYGAARD notified PDA of the incorporation of BKN.

14. In or about December 29, 2011, NYGAARD executed a Franchise License Agreement ("FLA"), effective September 15, 2011, for each of the three Northern California PDA franchises under his ownership and control- Sacramento, Stockton, and Santa Rosa. The FLA and the exhibits attached thereto was and is the operative contract governing the relationship between NYGAARD and PDA. The FLA expressly incorporated into its terms PDA's Operating Manual, a separate document, most recently updated July 20, 2011, consisting of approximately three-hundred fifty (350) pages divided into eight (8) sections of guidelines, advice, and forms for operation of the franchise.

15. Under the terms of the respective FLAs, NYGAARD was granted a <u>nonexclusive</u> license and right to operate PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA including PDA's "Proprietary Marks," PDA Software, PDA System and "any other confidential information or correspondence provided by PDA to Franchisee "as such may be changed improved or discontinued by PDA from time to time" for five (5) years, with an option for an additional 3 five (5) year terms. Renewal of the FLA was subject to certain conditions, including but not limited to, NYGAARD's providing written notice of election to renew by no later than one hundred eighty (180) days but no earlier than two hundred forty (240) days prior to expiration of the current term, and execution of a general waiver and release of all claims against PDA, its officers and agents.

16. Under the terms of the respective FLAs, PDA, as franchisor, agreed to provide NYGAARD, as a franchisee, with "assistance in operating the PDA franchise" including, but not limited to, the following:

    a.    An initial training program and "such other training programs as it deems appropriate";

1    b.   A hard copy and electronic copy of PDA's Operations Manual;
          however, "it will be the Franchisee's responsibility to stay apprised
          of any such amendments";
     c.   PDA may, but has no obligation to, refer clients to NYGAARD.
     d.   PDA may, but has no obligation to, provide ongoing assistance
          through field representatives, including regional conference calls,
          regional meetings, site visits and other meetings or phone calls;
          however, "Franchisee agrees to fully cooperate and make itself
          available for any phone calls meetings or site visits that PDA deems
          necessary."
     e.   PDA may in its sole discretion, but has no obligation to, provide
          marketing materials and materials regarding techniques for
          operating and marketing the business; and
     f.   PDA may conduct audits or inspections of NYGAARD's business in
          order to ensure that the business is operating in uniformity with
          PDA's standards "that may, in PDA's sole discretion, be established
          by PDA from time to time for operation of the Franchised
          Businesses."

17. Under the terms of the respective FLAs, in addition to the purchase price of the franchise businesses, NYGAARD agreed to pay to PDA a fifteen percent (15%) Royalty Fee on Gross Receipts weekly, and was obligated to provide weekly reports to PDA of all income received for calculation and payment of the same. In addition to the fifteen percent (15%) Royalty Fee, NYGAARD agreed to pay an additional two percent (2%) factoring fee to PDA for invoice payments, to purchase NYGAARD's insurance policies from PDA's preferred vendor, which policies provided coverage for PDA, at NYGAARD's expense, to pay an annual "advertising fee" of approximately $364, and pay software license fees. Additionally, NYGAARD agreed to bear the expense of any and all fees for training programs that PDA, in its sole discretion, determined necessary.

18. Under the terms of the respective FLAs, NYGAARD agreed to operate the franchised businesses in conformity with the Operations Manual or "with such uniform standards, techniques, and procedures as PDA may from time to time prescribe…." Specifically, NYGAARD agreed to:

   a. Perform only appraisal and appraisal-related services authorized by PDA as part of the PDA system and for which NYGAARD's personnel were qualified to perform;
   b. To maintain NYGAARD's office in clean orderly condition and good repair in conformity with PDA requirements;
   c. To keep the business open for the minimum days and hours as prescribed by PDA;
   d. To keep PDA advised of NYGAARD's personnel;
   e. To use only PDA forms and procedures;
   f. To ensure that all of NYGAARD's personnel execute the PDA confidentiality agreement;
   g. Not to accept any bribe or kickback;
   h. Not to use a shop or contract estimate without NYGAARD's own independent investigation and estimate;
   i. Not to purchase or sell salvage title without consent of PDA;
   j. Not to engage in any activity that presents a conflict of interest without PDA's knowledge or consent;
   k. Repair or replace computer hardware or software at NYGAARD's own expense as required or necessary to comply with PDA System;
   l. Devote not less than 10 hours per month to promoting and marketing and to maintain monthly report in PDA format and furnish to PDA within seven (7) days of request;
   m. Use only PDA approved promotional approvals;
   n. Not issue any media statements without PDA prior approval;

  o. Maintain at NYGAARD's expense a phone line and Post Office Box and execute a Limited Power of Attorney assigning rights in phone line and P.O. Box to PDA;

  p. Maintain insurance policies purchased through PDA Required National Program including coverage for PDA, PDA subsidiaries and affiliates in addition for NYGAARD;

  q. Compliance with all Federal, State and local laws, ordinances, and permit requirements; and

  r. To permit PDA and its agents to enter NYGAARD's business premises without notice during business hours for the purpose of conducting an audit or inspection;

19. The respective FLAs also stated, "Franchisee understands and agrees that due to changes in competitive circumstances or presently unforeseen changes in the needs of clients, the PDA System is subject to change in order that it best serve the interests of PDA, Franchisee and the PDA System. Accordingly, Franchisee expressly acknowledges and agrees that PDA may from time to time change the PDA System including, but not limited to, altering the programs, services, methods, uniform standards, forms, policies, and procedures of the PDA System; adding to, deleting from or modifying those programs and services which the Franchised Business is authorized to offer; and changing, improving or modifying the Proprietary Marks. Franchisee expressly agrees to abide by any such modifications, changes, additions, deletions, and alterations and expressly acknowledges and agrees that Franchisee is subject to the Infraction System to ensure compliance with all of the standards of the PDA System."

20. Section 12 of the respective FLAs set forth the conditions of default and termination of the parties' agreement. Section 12.A. allows NYGAARD to terminate the parties' agreement only upon 90 days' notice to PDA if PDA materially breaches the terms of the parties' agreement and fails to cure within thirty days after receipt of an "effective" notice, defined as one that "specifically state[s] the precise nature of the

alleged breach by PDA." Section 12.B of the respective FLAs identifies events of default by NYGAARD, to wit:

    a.    Relocation without prior written consent or failure to properly complete the required Office Change Form;

    b.    Conviction of a felony, crime of moral turpitude, or crime/offense reasonably likely "in the sole opinion of PDA" to adversely affect PDA System;

    c.    Attempt to transfer or assign franchise without consent;

    d.    Breach or default of Franchisee warranties in Section 5 of FLA;

    e.    Where no transfer of franchise effected following death or disability of franchisee;

    f.    Failure to maintain books and records, or submission of false reports or statements;

    g.    Failure to timely submit record of marketing activity without cure in seven (7) days;

    h.    Misuse of Proprietary Marks without cure in twenty-four (24) hours;

    i.    Use of body shop or contractor estimate without independent estimate or investigation;

    j.    Sale or purchase of salvage title without written consent;

    k.    Directing repairs to specific repair facilities;

    l.    Accepting a kickback or bribe;

    m.    Failure to maintain required insurance without cure within seven (7) days;

    n.    Failure or refusal to pay monies owed to PDA or to submit financial reports without cure;

    o.    Default on monetary obligations to PDA in three consecutive weeks regardless of cure;

|   |   |   |
|---|---|---|
| 1 | p. | Failure to obtain or comply with executed covenants under Section |
| 2 |   | 14 of the FLA; |
| 3 | q. | Loss of permits or licenses; |
| 4 | r. | Termination of factoring agreement due to submission of false or |
| 5 |   | fraudulent invoices; |
| 6 | s. | Incurring an additional Infraction within 90 days after receiving |
| 7 |   | notice from PDA that NYGAARD had received the threshold |
| 8 |   | number of infractions applicable to the business under the |
| 9 |   | Infraction System; |
| 10 | t. | Failure to commence operations within the time limits prescribed in |
| 11 |   | the FLA or abandonment of operations; |
| 12 | u. | Failure or refusal to obtain PDA's written consent as required by |
| 13 |   | FLA; |
| 14 | v. | Engaging in business confusingly similar to Proprietary Mark; |
| 15 | w. | Insolvency; |
| 16 | x. | Filing of a bankruptcy petition; |
| 17 | y. | An adjudication that NYGAARD is bankrupt and/or placement in |
| 18 |   | receivership; |
| 19 | z. | Sale of NYGAARD's assets after levy; |
| 20 | aa. | Dissolution or sale of NYGAARD's business; |
| 21 | bb. | Suit to foreclose a lien or mortgage; and |
| 22 | cc. | Execution or levy that impairs NYGAARD's ability to perform. |

  21. Section 1.11 of the Operations Manual sets forth an Infraction/Complaint Review System "to ensure uniform compliance with operational standards and high-quality service by all franchisees operating under the PDA System." Section II of 1.11 provides:

> "Infractions may include, but are not limited to:
> 
> • Failure to answer the office telephone during operating hours

- Failure of an office to be open for operation Monday-Friday 8:00 a.m.-5:00 p.m. except for designated holidays
- Failure to respond to communications
- Failure to provide status on an assignment
- Failure to upload an assignment properly to a client
- Failure to follow Client Procedure Agreements, client instructions, and/or any mutually agreement upon directive issued by the client
- Failure to provide coverage in your marketing area without providing written documentation to the Regional Manager
- Failure to exhibit professional behavior
- Failure to handle supplements properly
- Improper invoicing- e.g. invoicing an assignment prior to proper completion of the assignment
- Failure to participate in mandatory trainings and/or meetings."

22. Section III. of the PDA Infraction/Complaint Review System sets forth the procedure for how an infraction process is initiated. It states, "[w]hen a complaint is received from any party with respect to a franchise office's performance, PDA will investigate the complaint and will determine whether the franchise office's conduct constitutes an Infraction. If an Infraction has occurred, PDA will send written notice of the Infraction to the applicable franchisee. If the conduct forming the basis of the complaint does not constitute and Infraction, the complaint will be used as a training opportunity for the subject franchise office and applicable franchisee.

23. Section V of the PDA Infraction/Complaint Review System states that if a franchise office incurs a specified number of infractions within a consecutive 12-month period, PDA "will send the applicable franchisee a written notice to that effect." Receipt of that notice triggers a 90-day probationary period. If during the 90-day probationary period the franchise office incurs an additional infraction, "then an incurable Event of

Default will exist" and "PDA may terminate that Franchise License Agreement and the licenses granted thereunder immediately upon notice to the applicable franchise."

24. PDA's Operations Manual provides that PDA's franchisees have a maximum 3.0-day service time <u>on average</u> for auto assignments. Assignments "should be" entered into the system within four business hours of receipt. If audited, at least eighty percent (80%) of files not completed within the 3.0-day service time "must have a status," meaning a phone call to the adjuster documented through Roadmap or WinFMS, an email to the adjuster using the status function in Roadmap or WinFMS, or status through CCC Autoverse or Audatex.

25. Section 4 of the PDA Operations Manual states that NYGAARD's mandatory office hours are Monday through Friday 8:00 a.m. – 5:00 p.m. except the following holiday, New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, Day After Thanksgiving, Christmas Eve and Christmas Day.

26. The FLAs each expressly state that they are fully integrated agreements. No modification of those agreements, whether oral or written, was subsequently ever offered to or accepted by NYGAARD.

27. From the date of execution of the FLA on December 29, 2011, to November 10, 2016, NYGAARD performed his duties and obligations under the FLA and Operations Manual including, but not limited to, performing appraisals and hiring personnel to perform appraisal services for PDA clients, providing weekly reporting and paying Royalty Fees on work performed, providing status reporting to PDA clients on assignments, and performing at least ten hours of marketing each month and reporting the same. Following NYGAARD'S execution of the FLA at the end of 2011, PDA experienced a high degree of turnover in its corporate offices, resulting in a revolving door of regional management over NYGAARD's businesses.

28. NYGAARD is informed, believes, and based thereon alleges that Jackie Buscemi, AVP Sales and Operations, Southeast Region, although purportedly charged with franchise operations in the Southeast only, was given responsibility to oversee the

Western areas that included PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA. During her tenure, Ms. Buscemi promulgated numerous additional, unnecessary and oppressive procedures and reporting requirements, not applied by PDA as national standards and required by other regional management, which were outside of the terms agreed to within the FLA, and were not agreed to by NYGAARD.

29. NYGAARD is informed, believes, and based thereon alleges that beginning in or about January 2015, following changes in the corporate leadership of PDA, PDA commenced a course of conduct to increase the issuance of "infractions" to franchisees for alleged violations of policies or procedures not stated within the FLA or Operations Manual, for the purpose of forcing franchisees into default.

30. On November 18, 2015, NYGAARD received an email from Jackie Buscemi, sent to all of the Southeast and Western franchisees, requesting that the franchisees complete a marketing plan and submit it by December 31, 2015. Thereafter, at approximately 2:35 p.m. on December 8, 2015, NYGAARD received a second email indicating that the same marketing report was due on December 9, 2015. NYGAARD submitted marketing reports for PDA SACRAMENTO and PDA STOCKTON on December 23, 2015, per the November 18, 2015, email directive. However, on December 28, 2015, NYGAARD received two Infractions, one for each office, for failing to "timely submit" the marketing plans for each office. Nowhere in the FLA or Operations Manual is an annual marketing plan mentioned as a requirement of the franchise, nor do the Infractions indicate that they were the result of a complaint.

31. On December 28, 2016, NYGAARD also received separate Infractions for failing to attend a required meeting on December 22, and failing to respond to a telephone call from Jackie Buscemi on that same day. NYGAARD attempted to appeal from the Infractions, noting: 1) he was provided less than twenty-four hours' notice of the meeting, which was scheduled for a date that he was traveling for the Christmas holidays and could not alter his travel plans; 2) he received a telephone call from Ms. Buscemi's superior on the same date regarding the same topic, following that

conversation the further conversation with Ms. Buscemi appeared to be moot; and 3) NYGAARD had made several requests, via email, for assistance from Ms. Buscemi regarding the subject to both the December 22 meeting and the telephone call, on December 15 and 18, respectively, to PDA that had been unanswered or otherwise ignored. NYGAARD's appeal was denied and the Infractions issued. Nowhere in the FLA or Operations Manual is there a requirement to respond to a telephone call from PDA management "on the same day," nor did the Infraction indicate that it was the result of a complaint.

32. On February 26, 2016, NYGAARD received an Infraction for PDA SACRAMENTO, and a separate Infraction for PDA STOCKTON for "failure to send in cycle time reports for 3 months." "Cycle time reports" are not mentioned anywhere in the FLA or the Operations Manual as a requirement of the franchisee, nor does the Infraction indicate that the it resulted from a complaint. Furthermore, the Infraction was factually inaccurate, as a "cycle time report," while not required, had been submitted within the time frame encompassed by the Infraction, a fact brought to the attention of Ms. Buscemi at the time the Infraction was issued but was entirely ignored.

33. On February 16, 2016, NYGAARD received an Infraction for PDA STOCKTON for alleged failure to enter files into system within four business hours of receipt of assignment. There is no rule or procedure mentioned anywhere in the FLA or the Operations manuals that the franchisee enter files into the system "within four business hours of receipt of an assignment," nor does the Infraction indicate that it resulted from a complaint.

34. On March 3, 2016, NYGAARD received an Infraction for PDA SACRAMENTO for "failure to label photographs per PDA Guidelines" for allegedly failing to label the photographs with the part names. There is no rule or procedure mentioned anywhere in the FLA or the Operations manual that required the franchisee to label the photographs with the part names, nor does the Infraction indicate that it resulted from a complaint.

35.     On March 4, 2016, NYGAARD received letters from PDA, addressed to PDA SACRAMENTO and PDA STOCKTON, advising that "Your office has received seven (7) infractions which meets or exceeds the Infraction Threshold…." The Infraction Threshold, as defined for an Appraisal Tier of 765 or Less is (6) Infractions of the <u>same</u> nature or (10) Infractions of <u>any</u> nature. The notice stated that if NYGAARD received an additional Infraction within the ninety (90) day probationary period following the notice, an "incurable event of default" would occur resulting in termination of the franchise.

36.     On May 7, 2016, at approximately 8:00 p.m., NYGAARD received an email advising him of the need to complete a MetLife Appraiser Workflow Training. The following day, May 8, 2016, NYGAARD attempted to access the training through the link provided in the email but was locked out, as the link was valid only to 12:00 a.m. on May 8. NYGAARD immediately contacted the Training Manager and AVP of Sales and Operation to apprise them of the situation and to arrange to complete the training. Thereafter, NYGAARD was advised that he would receive a $110.00 penalty if he did not complete the mandatory MetLife Appraiser Workflow Training. On or about May 31, 2016, NYGAARD was issued an Infraction for PDA STOCKTON for failing to complete the mandatory training, in spite of the email link notification received after business hours with only four hours left to complete the training. Nothing in the Infraction indicates that it was initiated based upon a Complaint.

37.     On May 12, 2016, NYGAARD received another Infraction for alleged failure to properly status an assignment. Nothing in the Infraction indicates that it was initiated based upon a Complaint.

38.     On May 22, 2016, NYGAARD received another Infraction for alleged failure to follow Client Procedure. Nothing in the Infraction indicates that it was initiated based upon a Complaint.

39.     On May 27, 2016, NYGAARD received 3 additional Infractions for purported failure to properly status assignments. Nothing in the Infractions indicates that any of them was initiated based upon a Complaint.

40. NYGAARD was orally informed on June 2, 2016, by PDA's agent Katherine Slate that contesting the Infractions issued would be a pointless exercise because PDA would just continue to look for and issue Infractions against NYGAARD's businesses.

41. On June 2, 2016, NYGAARD received written notice from PDA that his franchise agreements and rights to operate those franchise businesses known as PDA SACRAMENTO and PDA STOCKTON were terminated as a result of excessive Infractions.

42. Following June 2, 2016, PDA has assumed control over all clients, operations, appraisals, and work in progress within the PDA SACRAMENTO and PDA STOCKTON territories. Since June 2, 2016, PDA has insisted that PLAINTIFFS continue to provide services for PDA SACRAMENTO and PDA STOCKTON clients, then refused to pay PLAINTIFFS for the services provided.

43. Following termination of NYGAARD's PDA SACRAMENTO and PDA STOCKTON franchises, PDA contacted NYGAARD's personnel for the purposes of hiring those personnel to perform appraisal services within the Sacramento and Stockton areas as employees or contractors working directly for PDA.

44. On August 5, 2016, NYGAARD received eight Infractions for PDA SANTA ROSA. All or some were improperly issued.

45. Following these eight Infractions, NYGAARD was placed on a 90-day probationary period. During this probationary period, NYGAARD could not incur any other Infractions. If he did, then an incurable event of default would exist, and his final franchise would be terminated.

46. Just days before his probationary period was coming to an end, NYGAARD received four infractions on November 2, 2016. All or some of these Infractions were also improperly issued.

47. On November 10, 2016, NYGAARD received a letter from PDA terminating NYGAARD's PDA SANTA ROSA franchise.

///

**FIRST CAUSE OF ACTION-**
**WRONGFUL TERMINATION OF FRANCHISE**
**PLAINTIFFS v. PDA and DOES 1-50**

48. PLAINTIFFS incorporate by this reference as though fully set forth herein the allegations stated in paragraphs one (1) through forty-six (46) above.

49. PDA and NYGAARD entered into two franchise agreements, one for PDA SACRAMENTO, another for PDA STOCKTON and PDA SANTA ROSA, neither of which had expired by their natural contract terms. At all times relevant, PDA had actual and/or constructive knowledge that NYGAARD operated PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA through his corporation, BKN, and ratified and/or consented to the same.

50. No good cause existed for the termination of either franchise agreement by PDA, nor did PLAINTIFFS repeatedly fail to comply with any requirement of the franchise as set forth in the FLA and Operations Manual sufficient to give rise to the remedy of termination of the FLA.

51. PDA's termination of PLAINTIFFS' franchise rights in PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA was wrongful and a violation of Business & Professions Code §§20020 and 20021.

52. As a direct and proximate result of PDA's wrongful conduct, PLAINTIFFS have suffered damage including, but not limited to, the loss of the fair market value of PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, loss of income, loss of additional business opportunities and other amounts not yet ascertained.

**SECOND CAUSE OF ACTION-**
**BREACH OF CONTRACT**
**NYGAARD v. PDA and DOES 1-50**

53. PLAINTIFFS incorporate by this reference as though fully set forth herein the allegations stated in paragraphs one (1) through forty-six (46) above

54. Plaintiff NYGAARD and PDA have a written contract.

55. Plaintiff NYGAARD performed all obligations required of him under the parties' contract and/or such performance has been excused.

56. Defendant PDA breached the terms of the parties' contract, including but not limited to, failing to follow the policies and procedures set forth in the Operations Manual for Infractions, Defaults and Termination of franchises.

57. As a direct and proximate result of PDA's wrongful conduct, NYGAARD has suffered damage including, but not limited to, the loss of the fair market value of PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, loss of income, loss of additional business opportunities and other amounts not yet ascertained.

### THIRD CAUSE OF ACTION-
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### NYGAARD v. PDA and DOES 1-50

58. PLAINTIFFS incorporate by this reference as though fully set forth herein the allegations stated in paragraphs one (1) through forty-two (42) and forty-nine (49) through fifty-one (51) above.

59. Defendant PDA unfairly interfered with Plaintiff NYGAARD's right to receive the benefits of the FLA by its acts and omissions including, but not limited to, the wrongful termination of NYGAARD's franchise rights in PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA

60. As a direct and proximate result of PDA's wrongful conduct, NYGAARD has suffered damage including, but not limited to, the loss of the fair market value of PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, loss of income, loss of additional business opportunities and other amounts not yet ascertained.

### FOURTH CAUSE OF ACTION-
### CONVERSION
### PLAINTIFFS v. PDA and DOES 1-50

61. PLAINTIFFS incorporate by this reference as though fully set forth herein the allegations stated in paragraphs one (1) through fifty-nine (59) above.

62. PLAINTIFFS had ownership and right to possession of valuable property rights in the franchise businesses known as PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, including but not limited to, the fair market value and stream of income from those ongoing business operations.

63. PDA has intentionally and substantially interfered with PLAINTIFFS' property rights by taking possession and control over PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, including but not limited to, the fair market value and stream of income from those ongoing business operations.

64. PLAINTIFFS' did not consent to PDA's unlawful and intentional interference with NYGAARD's property rights.

65. As a direct and proximate result of PDA's wrongful conduct, PLAINTIFFS have suffered damage including, but not limited to, the loss of the fair market value of PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, loss of income, loss of additional business opportunities and other amounts not yet ascertained.

## FIFTH CAUSE OF ACTION- UNFAIR AND UNLAWFUL BUSINESS PRACTICES NYGAARD v. PDA and DOES 1-50

66. PLAINTIFFS incorporate by this reference as though fully set forth herein the allegations stated in paragraphs one (1) through forty-two (42) above.

67. PDA's acts and omissions complained of, described in paragraphs one (1) through forty-two (42) of this Complaint are unlawful, unfair and/or fraudulent as those terms are defined by the Unfair Competition Law, Business & Professions Code §17200 and case law regarding the same.

68. As a result of PDA's unlawful, unfair, and/or fraudulent acts, PLAINTIFFS have suffered actual harm and injury, including but not limited to loss of the fair market value of PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA, loss of income from those ongoing businesses and interest thereon, and other amounts not yet ascertained.

WHEREFORE, PLAINTIFFS PRAYS FOR RELIEF AS FOLLOWS:

On the First Cause of Action- Wrongful Termination of Franchise:

    1. Fair Market Value of PDA SACRAMENTO, pursuant to Business & Professions Code §20035;

2. Fair Market Value of PDA STOCKTON, pursuant to Business & Professions Code §20035;

3. Fair Market Value of PDA SANTA ROSA, pursuant to Business & Processions Code §20035;

4. Compensatory damages for lost income and loss of use of funds, in an amount to be ascertained at trial;

5. Prejudgment interest;

6. Attorney's fees;

7. Costs of suit; and

8. Any other relief the Court deems proper.

On the Second Cause of Action – Breach of Contract:

1. Compensatory damages to include, but not be limited to, lost profits, lost income, loss of use of funds, in an amount to be ascertained at trial;

2. Prejudgment interest;

3. Attorney's fees;

4. Costs of suit; and

5. Any other relief the Court deems proper.

On the Third Cause of Action- Breach of the Implied Covenant of Good Faith and Fair Dealing:

1. Compensatory damages to include, but not be limited to, lost profits, lost income, loss of use of funds, in an amount to be ascertained at trial;

2. Prejudgment interest;

3. Attorney's fees;

4. Costs of suit; and

5. Any other relief the Court deems proper.

///

///

///

On the Fourth Cause of Action- Conversion:

1. Restitution of all property withheld or detained by PDA, including but not limited to, PDA SACRAMENTO and PDA STOCKTON- all income, receipts, deposits and other amounts to be ascertained at trial according to proof;
2. Prejudgment interest;
3. Attorney's fees;
4. Costs of suit; and
5. Any other relief the Court deems proper.

On the Fifth Cause of Action- Unfair and Unlawful Business Practices:

1. Restitution of all monies and property obtained by PDA as a result of its unfair, unlawful, and/or fraudulent business practices including but not limited to, PDA SACRAMENTO, PDA STOCKTON, and PDA SANTA ROSA - all income, receipts, deposits and other amounts to be ascertained at trial according to proof;
2. Injunctive relief, including but not limited to issuance of an injunction to preclude PDA from engaging in the unfair, unlawful or fraudulent practice of creating and issuing "Infractions" for alleged acts or omissions not in violation of any specified contractual policy or procedure agreed to by PDA's franchisee;
3. Prejudgment interest;
4. Attorney's fees;
5. Costs of suit; and
6. Any other relief the Court deems proper.

DATED: June 1, 2021                                 **FLESHER SCHAFF & SCHROEDER, INC.**

By  */s/ Jason W. Schaff*
JACOB D. FLESHER
JASON W. SCHAFF
NICOLE M. LOW
Attorneys for Plaintiffs
Bryan Nygaard and BKN, Appraisals, Inc.